**Jason BROWN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 38A02–0411–CR–00919.**

Court of Appeals of Indiana.

July 14, 2005.

Chris M. Teagle, Muncie, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Jason Brown appeals his convictions for Operating a Vehicle After Lifetime Suspension,[1] a class C felony, Resisting Law Enforcement,[2] a

class A misdemeanor, Theft,[3] a class D felony, two counts of Resisting Law Enforcement,[4] a class D felony, and with being a Habitual Offender.[5]

Specifically, Brown contends that: (1) the trial court erred in denying his motion for change of venue from the judge; (2) it was error to deny his motion to dismiss the charge of Operating a Vehicle After Lifetime Suspension; (3) certain evidence surrounding his apprehension and arrest was improperly excluded; (4) the trial court refused to give two final instructions that he had proffered; (5) the evidence was insufficient to support the convictions for Operating a Vehicle After a Lifetime Suspension and for Theft; and (6) he was improperly sentenced. We conclude that the evidence was sufficient to support Brown's conviction for operating a vehicle after lifetime suspension when it was demonstrated that he had driven a snowmobile on a public road without a valid driver's license. Additionally, we reverse two of Brown's convictions for resisting law enforcement, and remand this cause to the trial court with instructions that it vacate the two convictions that were alleged in counts two and six of the charging information. Also on remand, we instruct the trial court to correct its sentencing order to reflect that the remaining resisting law enforcement conviction be enhanced by the four-year sentence that was imposed on the habitual offender count. In all other respects, we affirm the judgment of the trial court.

## FACTS[6]

Sometime during the evening of February 5, 2004, Officer Johnny Watkins, a

---

1. Ind.Code § 9–30–10–17.

2. Ind.Code § 35–44–3–3(a)(3).

3. Ind.Code § 35–43–4–2(a).

4. I.C. § 35–44–3–3(a)(3); I.C. § 35–44–3–3(b)(1)

5. Ind.Code § 35–50–2–8(a).

6. We heard oral argument in this case on June 7, 2005, in Indianapolis. We commend counsel for their able presentations.

Reserve Town Marshall with the Pennville Police Department, received a report that there was a disturbance at the Briar Patch Tavern (Briar Patch) in Pennville that involved Brown. It was determined that Brown had three outstanding felony arrest warrants, and the police had been searching for him for nearly two weeks.

When several Jay County police officers arrived at the Briar Patch, they learned that Brown had just gotten into a vehicle and left the area. As a result, Officers Watkins, Wells and Simmons separated and began searching for Brown in various areas in and around Pennville.

At some point, while traveling on County Road 250 North, Officer Watkins noticed a vehicle that was partially in a driveway and partially in a ditch at the residence of Randy Elwood. Officer Watkins stopped his vehicle and asked Elwood if he knew who had been driving the vehicle. Elwood responded that Brown had been driving it, and he yelled for Brown, who had been standing near Elwood's truck. Officer Watkins observed Brown stand up by the truck, look at him for a moment and then turn and run into a field. Officer Watkins identified himself as a police officer and ordered Brown to stop. However, Brown continued to flee through the field toward a nearby wooded area. Officer Watkins then radioed his location to other officers, indicating that he was pursuing Brown on foot.

Officer Watkins continued to follow until Brown entered the woods. At some point, Officer Wells and his K–9 unit arrived to assist in the search. Several police officers pursued Brown through the countryside for several hours until Brown was observed coming out of the woods near Robert Richardson's residence. Officer Zigler, who was nearly forty yards behind Brown, yelled at Brown, identified himself as a police officer several times, and or-

dered Brown to stop. However, Brown continued running toward the Richardson property. Eventually, the officers observed Brown enter Richardson's barn.

Brown opened an overhead door and got onto a snowmobile that was owned by David Gaskill and stored in Richardson's barn. The snowmobile had been there for approximately two years, and Brown had worked on the vehicle a few days earlier at Richardson's residence. Brown had fixed the snowmobile and made it operational. At some point, Richardson acknowledged that Brown had permission to go into his pole barn and take whatever items he wished in light of their prior practice of doing so. Both Brown and Richardson testified that the two of them often borrowed tools from each other without prior permission. On the other hand, Richardson testified at trial that Brown only had permission to enter the barn in order to retrieve his own tools. He specifically acknowledged that Brown did not have permission to take the snowmobile from the premises.

Brown started the snowmobile and accelerated out of the garage, striking Officer Simmons in the right leg and knocking him down. Officer Simmons then drew his weapon and fired a shot toward the snowmobile in an attempt to damage it but he missed, and Brown accelerated through the yard. As Brown sped across the yard, Deputy Marshall Smith grabbed Brown's arm and was dragged a short distance before he lost his grip and fell. Other officers pursued Brown and were able to keep Brown in sight during the chase. Brown was observed driving the snowmobile on the roads, through fields, cemeteries, and along some tree lines.

Officer Zigler then saw the snowmobile stop, so he approached and observed footprints leading from the snowmobile to the nearby residence of Brown's father.

Brown was then apprehended and charged with the above offenses. He was also charged with burglarizing Richardson's barn and with being a habitual offender.

Thereafter, Brown moved for a change of judge prior to trial alleging bias and prejudice because the trial judge—prior to becoming a judge—had been his probation officer on a case several years earlier. Also, while the judge had been in private practice, he had represented a petitioner in a paternity suit that had been instituted against Brown. Brown also moved to dismiss the operating charge, asserting that the State had failed to allege a crime because a snowmobile does not qualify as a motor vehicle and that the charging information failed to allege that Brown had operated the snowmobile on a public road or private road that was used by the general public. The trial court ultimately denied both motions.

At a jury trial that commenced on August 26, 2004, Brown attempted to introduce evidence concerning his arrest and what had occurred at his father's house, but the trial court refused to admit this evidence. Brown made an offer of proof, wherein he indicated that he desired to call the Honorable Joel D. Roberts, the Judge of the Jay Superior Court, as a witness to testify that Brown had telephoned Judge Roberts in an effort to surrender to someone other than the police officers who had been pursuing him. Brown also claimed that he had made a similar offer to Officer Travis Weaver of the Jay County Police Department with whom Brown had conversations while at his father's house. Brown further alleged that he offered to turn himself in to the Indiana State Police Department. Brown then contended in his offer of proof that he was on the telephone with Officer Weaver when the emergency response team entered his father's residence. Brown alleged that the police offi-cers battered him by injuring his ankle, kicking him in the head and ribs, and leaving a bruise on his forehead. Brown also wanted to offer evidence that the officers commented that he was screaming in pain and "squealing like a bitch." Appellant's Br. p. 14. Brown intended to offer tape recordings of his conversations with Judge Roberts and Travis Weaver, inasmuch as he believed that such evidence was relevant to demonstrate the reasonableness of his fear and the tendency of the officers to use excessive force against him. Brown also maintained that his father would have testified about the treatment Brown received by the police officers when they entered his residence.

At some point, Brown tendered two final instructions to the trial court regarding the amount of force that the police could employ to effectuate an arrest. The trial court refused to give those instructions for the reason that no evidence was offered at trial that would have supported the giving of those instructions. In the end, Brown was found guilty of the above offenses and the habitual offender count. However, he was acquitted on the burglary charge.

At the sentencing hearing, the trial court found—as aggravating circumstances—that Brown had violated the conditions of probation in committing the instant offenses, that Brown had a significant history of delinquent and criminal activity, and that he was in need of correctional or rehabilitative treatment that would best be provided by commitment to a penal facility because he had been on probation many times and was given opportunities to correct his criminal behavior but did not do so. On the other hand, the trial court found—as mitigating factors—that imprisonment would result in undue hardship to Brown's children and that he had the support of his family. In the end, the trial court determined that

the aggravating circumstances outweighed the mitigating factors. As a result, Brown was sentenced to six years on the Operating charge, one year on the class A misdemeanor Resisting charge, two years for Theft, and to two years each on the class D felony Resisting charges. All sentences were ordered to run concurrently. With respect to the habitual offender charge, the trial court imposed a four-year enhanced sentence, ordering that it run consecutively to the sentences that had been imposed on the theft count and the two class D felony Resisting charges. Brown now appeals.

## DISCUSSION AND DECISION

### I. Change Of Venue From the Judge

Brown first contends that the trial court erred in denying his motion for change of venue from the judge. Specifically, Brown maintains that his motion should have been granted because he established that the judge was prejudiced and biased against him.

 The reversal of a trial court's decision on a motion for change of judge requires a showing that leaves this court with a definite and firm conviction that a mistake has been made. *Sturgeon v. State,* 719 N.E.2d 1173, 1182 (Ind.1999). To be sure, the law presumes that a judge is unbiased and unprejudiced, and a change of judge is neither "automatic" nor "discretionary." *Id.; Smith v. State,* 535 N.E.2d 1155, 1157 (Ind.1989). In accordance with Indiana Criminal Rule 12(B), a defendant requesting a change of judge on the grounds of bias or prejudice must "timely file an affidavit that the judge has a personal bias or prejudice against the State or defendant." The affidavit must set forth the "facts and the reasons for the belief that such bias or prejudice exists," and be accompanied by a "certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true." Crim. R. 12(B). In considering a motion for change of judge, the trial judge must examine the affidavit, treat the facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice. *Sturgeon,* 719 N.E.2d at 1181. The court must grant the request "if the historical facts recited in the affidavit support a rational inference of bias or prejudice." *Winn v. State,* 748 N.E.2d 352, 357 (Ind.2001).

 In support of his argument that he was entitled to a change of venue from the judge, Brown points out that the trial judge had previously worked for the probation office and, during that time, had served as Brown's probation officer on a case in 1991. Tr. p. 63–65. Brown also notes that the trial judge had previously represented an opposing party in a paternity action that had been filed against him when the judge had been in private practice.

In resolving this issue, we first note that Brown did not demonstrate how the prior relationship with the trial judge in any way prejudiced him. In our view, the mere fact that the trial judge was Brown's probation officer on a case in 1991 does not compel a determination that the trial judge harbored any bias or prejudice against him. Similarly, we cannot say that merely because the judge had once argued a case against Brown in 1998 amounts to judicial bias or prejudice. As a result, because Brown has failed to show that the trial judge would not be able to preside over this case in a fair and impartial manner, we conclude that the trial court properly denied his motion.

### II. Denial of Motion To Dismiss

Brown next argues that the trial court erred in denying his motion to dismiss the

charge of Operating a Vehicle After Lifetime Suspension. In particular, Brown contends that because a motorized bicycle is not considered a "motor vehicle" in accordance with Indiana Code section 9–13–2–105(d), a "motor vehicle" should similarly not include a snowmobile. Brown also argues that dismissal was appropriate because the charging information did not specifically allege that Brown had operated the snowmobile on a public road or on a private road used by the general public.

▬ In resolving this issue, we first note that the purpose of a charging instrument is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense. *Ben–Yisrayl v. State*, 738 N.E.2d 253, 271 (Ind. 2000). When a defendant files a motion to dismiss the State's charging information, the facts alleged in the information are to be taken as true. *State v. Gillespie*, 428 N.E.2d 1338, 1339 (Ind.Ct.App.1981). It has been held that the question of whether a snowmobile is a "motor vehicle" is one of fact that the factfinder must resolve. *See State v. Bilbrey*, 743 N.E.2d 796, 798–99 (Ind.Ct.App.2001).

In this case, the information charging Brown with this offense reads as follows:

> [O]n or about February 7, 2004 in Jay County, State of Indiana, Jason B. Brown did operate a motor vehicle while said person's driving privileges were forfeited for life under I.C. 9–30–10–16, contrary to the form of the statutes in such cases made and provided by I.C. 9–30–10–17 and against the peace and dignity of the State of Indiana.

Appellant's App. p. 8.

▬ Turning to the relevant statutes at issue here, we note that the express language of Indiana Code section 14–16–1–7, states that the term " 'vehicle' refers to an off-road vehicle or a snowmobile." Also,

pursuant to Indiana Code section 14–16–1–20(c), our legislature has declared that a valid driver's license is required to operate a vehicle on a public highway. Finally, as set forth in Indiana Code section 9–13–2–105(d), the only limitation pertaining to the definition of "motor vehicle" is the specific exclusion of a motorized bicycle.

In light of these statutes, it is apparent that the State sufficiently set forth the allegations against Brown and provided him with notice of the charged offense. We also reject Brown's claim that this charge should have been dismissed because the State did not allege that he had operated the snowmobile on a public road. To be sure, we do not see how the State's failure to specifically allege this fact in the charging information impeded Brown's ability to prepare a defense in light of the statutory definitions set forth above. As a result, we conclude that the trial court properly denied Brown's motion to dismiss this charge.

### III. Exclusion Of Evidence

Brown next argues that the trial court erred in refusing to allow him to present evidence in support of his claim that the police officers used excessive force when he was arrested at his father's residence. Brown asserts that such evidence was relevant and that the offer of proof that he made established that the police officers used unlawful force during the episode.

▬ The admission or exclusion of evidence falls within the sound discretion of the trial court and we review the trial court's determination regarding the admissibility of evidence for an abuse of that discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind.2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* Also, in determining the admissibility

of evidence, this court will only consider the evidence in favor of the trial court's ruling, along with the unrefuted evidence in the defendant's favor. *Sallee v. State,* 777 N.E.2d 1204, 1210 (Ind.Ct.App.2002), *trans. denied.*

We also note that "relevant evidence" has been defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ind. Evidence Rule 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Evid. R. 403.

In addressing Brown's argument, we first set forth the language contained in the State's informations charging Brown with the Resisting Law Enforcement:

Count 2

> The undersigned says that on or about February 7, 2004 in Jay County, State of Indiana, Jason B. Brown did knowingly flee from Officer Jon Zigler, a law enforcement officer, after said officer identified himself by visible or audible means and visibly or audibly ordered said defendant to stop, contrary to the form of the statutes in such cases made and provided by I.C. 35–44–3–3(a)(3) and against the peace and dignity of the State of Indiana.

Count 5

> The undersigned says that on or about February 7, 2004, in Jay County, State of Indiana, Jason B. Brown did knowingly flee from Deputy Matt Simmons, a law enforcement officer, after said officer identified himself by visible or audible means and visibly or audibly ordered

said defendant to stop and in committing said act the defendant used a vehicle, contrary to the form of the statutes in such cases made and provided by I.C. 35–44–3–3(a)(3) and against the peace and dignity of the State of Indiana.

Count 6

> [O]n or about February 7, 2004 in Jay County, State of Indiana, Jason B. Brown did knowingly flee from Deputy Marshall Tim Smith, a law enforcement officer, after said officer identified himself by visible or audible means and visibly or audibly ordered said defendant to stop and in committing said act the defendant inflicted bodily injury on Tim Smith, to wit: pain, contrary to the form of the statutes in such cases made and provided by I.C. 35–44–3–3(a)(3) and against the peace and dignity of the State of Indiana.

Appellant's App. p. 9.

With regard to these offenses, the police officers acknowledged that at least one shot was fired. Hence, Brown argues that "the issue of whether or not the force being used by the police officers was excessive and thus unlawful was clearly an issue before the Court." Appellant's App. p. 19.

In support of his argument that the evidence contained in his offer of proof should have been admitted, Brown relies on this court's opinion in *Joyner v. State,* 678 N.E.2d 386 (Ind.1997). In *Joyner,* the trial court had excluded evidence that the defendant sought to introduce to show that someone else committed the charged offense. On appeal, we determined that under the circumstances, excluding such evidence was erroneous because it supported the defendant's theory that another individual had committed the charged offenses.

In response to Brown's argument, the State argues that the evidence Brown sought to have admitted involved circumstances that had occurred after the crimes had been committed. The State points out that the evidence primarily centered around the circumstances that had occurred when Brown was at his father's house, just before the arrest was made. Hence, says the State, Brown's proffered evidence was remote, inasmuch as the crimes had already been committed. Furthermore, the State contends that our holding in *Joyner* does not apply here. That is, the State argues that the excluded evidence did not go to the proof of any defense that Brown had raised. The State says that the evidence Brown sought to present only bolstered his testimony about what occurred at his father's residence after he had already fled and the circumstances surrounding his arrest. Tr. p. 462–68. Hence, the State contends that this evidence was properly excluded.

In examining these arguments, we first note that all of the charges alleging that Brown fled from the police officers involved one continuous episode of fleeing. To illustrate, in *Arthur v. State*, 824 N.E.2d 383 (Ind.Ct.App.2005), *trans. denied*, we were recently confronted with a circumstance that involved multiple counts of fleeing. In that case, a Beech Grove Police Department Officer was patrolling an area around 11:30 p.m., and observed a truck that was being driven in an erratic manner. The officer suspected that the driver—later identified as Arthur—might be intoxicated. At some point, the officer noticed that Arthur made a turn without signaling. Hence, he stopped Arthur's vehicle. When the officer approached the rear of the truck on foot, Arthur sped away. The officer followed, and Arthur crashed the truck into a fence. Arthur then exited the truck and fled on foot.

The police apprehended Arthur one and one-half blocks away. *Id.* at 384.

As a result of this incident, Arthur was charged, among other things, with two counts of resisting law enforcement. Following a bench trial, Arthur was convicted as charged. On appeal, we reversed one of the resisting convictions and observed as follows:

> Here, Arthur committed one continuous act of fleeing, albeit by two different means: Arthur began fleeing in a truck, and when he crashed the truck, he immediately began to flee on foot without first being intercepted by the police. Because we find his actions of fleeing by vehicle and then on foot constitute one continuous act of resisting law enforcement, we find that convictions on both counts cannot stand.

*Id.* at 387. In arriving at this result, this court commented that:

> [W]e cannot say that resisting law enforcement by fleeing in a vehicle is a different 'species' from resisting law enforcement by fleeing on foot. Rather, fleeing by means of a vehicle merely serves to enhance the penalty for fleeing. See Ind.Code § 35–44–3–3(b)(1) (setting forth that the offense of resisting law enforcement by fleeing is a Class D felony if the person uses a vehicle to commit the offense). Stated otherwise, whether on foot or in a vehicle, the same 'species' of behavior is proscribed: fleeing.

*Id.*

In this case, the record shows that Officer Zigler spotted Brown, identified himself as a police officer, and verbally ordered Brown to stop. Tr. p. 312–13, 339–40. Notwithstanding these demands, Brown continued to run. *Id.* After Brown entered the barn that was on the Richardson property, he started the snowmobile, accelerated it out of the building, and

struck Officer Simmons in the right leg. Tr. p. 247, 289–90, 315–16, 344–45. During this chase, Deputy Smith grabbed Brown's arm and was dragged a short distance before he lost his grip and fell. Tr. p. 247, 317, 347, 378–79. This single episode of fleeing from the police officers supported the bases for all three charges of resisting law enforcement against Brown. As in *Arthur*, the evidence here shows that during the chase, Brown engaged in one continuous act of fleeing. That is, during the chase, Brown fled from the three officers before finally being arrested at his father's house. Hence, we remand this cause to the trial court with instructions that it vacate his convictions for resisting and fleeing as to counts two and six. *Arthur*, 824 N.E.2d at 387.

■■ As an aside, we further note that it is apparent from the record that Brown had already completed his acts of fleeing from the officers before he reached his father's residence. Put another way, Brown had committed the offenses prior to the time that he had purportedly talked with Judge Roberts or Officer Weaver about his efforts to surrender. And the evidence that Brown sought to have admitted concerned the circumstances that occurred when Brown was at his father's house just prior to the arrest. Therefore, the evidence that Brown sought to offer was remote and not relevant to the charges. As a result, the trial court properly excluded this evidence.

### IV. Final Instructions

In a related issue, Brown argues that he is entitled to a reversal because the trial court failed to give two instructions that he had offered. Specifically, Brown maintains that he was deprived of the opportunity to adequately defend against the charges of resisting law enforcement because "the jurors had no guide post by which to determine whether or not the amount of force used by the officers was excessive or illegal." Appellant's Br. p. 22.

■■ In general, jury instructions lie within the sole discretion of the trial court. *Carter v. State*, 766 N.E.2d 377, 382 (Ind. 2002). We will reverse the trial court's decision regarding jury instructions only for an abuse of that discretion. *Forte v. State*, 759 N.E.2d 206, 209 (Ind.2001). Jury instructions are to be considered as a whole and in reference to each other, and we will not reverse the trial court's decision as an abuse of discretion unless the instructions as a whole mislead the jury as to the law of the case. *Carter*, 766 N.E.2d at 382.

■■ When evaluating whether a trial court erred in refusing or giving an instruction, we examine the following factors: (1) whether the instruction correctly sets out the law; (2) whether the evidence supports the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by the other instructions that were given. *Byers v. State*, 709 N.E.2d 1024, 1028–29 (Ind.1999). To obtain a reversal, a defendant must affirmatively demonstrate that the instruction error prejudiced his substantial rights. *Hall v. State*, 769 N.E.2d 250, 253–54.

■■ In this case, the trial court refused to give the following instructions that Brown had tendered:

Defendant's Proposed Final Jury Instruction No. 2

A law enforcement [officer] is justified in using reasonable force only if he reasonably believes that the force is necessary to effect a lawful arrest. However, an officer is justified in using deadly force only if the officer:

has probable cause to believe that deadly force is necessary [to] prevent the commission of a forcible felony; or

to effect an arrest on a person who the officer has probable cause to believe poses a threat of serious bodily injury to the officer or a third person; and has given a warning, if feasible, to the person against whom the deadly force is to be used.

Defendant's Proposed Final Jury Instruction No. 3

A criminal defendant shall not be subjected to any more restraint than is necessary for his arrest and detention. The law does not allow a police officer to use more force than is necessary to effect an arrest. And if the officer does use such unnecessary force, the officer may be lawfully resisted.

Appellant's App. p. 82–83.

Here, Brown only points to his own self-serving testimony in support of his argument that the police officers employed an amount of force other than what was reasonable during the chase and at the time of arrest. Therefore, Brown claims that "there was a failure of proof on behalf of the State in that one of the material elements of resisting law enforcement is evidence proving that the police officers were acting lawfully." Appellant's Br. p. 22.

Contrary to Brown's claims, the record reflects that Officer Simmons fired his weapon at the snowmobile in an effort to damage it as Brown accelerated from the garage. Tr. p. 247, 289–90, 315–16, 344–45. Moreover, Brown had hit Officer Simmons in the leg while fleeing from him. *Id.* The instruction that Brown offered correctly states that a police officer may use deadly force if the officer is effecting an arrest "of a person who the officer has probable cause to believe poses a threat of serious bodily injury to the officer or a third person; and (2) has given a warning, if feasible, to the person against whom the deadly force is to be used." Ind.Code § 35–41–3–3.

In our view, the evidence presented at trial demonstrated that this is precisely what occurred here. That is, Officer Simmons's testimony that Brown struck him with the snowmobile certainly demonstrated that he was justified in firing his weapon at the snowmobile in an effort to damage or dismantle it pursuant to Indiana Code section 35–41–3–3. To be sure, the evidence showed that Brown's actions amounted to a threat of serious bodily injury to Officer Simmons when Brown struck him with the snowmobile while speeding from the garage. Hence, notwithstanding Brown's testimony and argument to the contrary, we conclude that the proffered instructions were properly denied. *See Thrash v. State,* 690 N.E.2d 355, 357 (Ind.Ct.App.1998) (holding that the defendant was not entitled to an instruction regarding the justification of a person other than a law enforcement officer to effect an arrest where, among other things, the only evidence in favor of the proposed instruction was the defendant's own testimony that he was attempting to get his money back from the victim after the victim sold the defendant some "bad drugs").

### V. Sufficiency Of the Evidence

Brown next contends that the evidence was insufficient to support his convictions for theft and operating a vehicle after a lifetime suspension. In particular, Brown asserts that these convictions must be reversed because "there was no circumstantial evidence that [he] was aware that the vehicle was owned by the alleged victim of [the] crime," and the "operation of a snowmobile does not constitute the prohibited operation of a motor vehicle pursuant to the habitual traffic violator statute." Appellant's Br. p. 15.

In reviewing a claim of insufficient evidence, we neither reweigh the evi-

dence nor judge the credibility of the witnesses. *Grim v. State,* 797 N.E.2d 825, 830 (Ind.Ct.App.2003). Instead, we look to the evidence most favorable to the judgment and the reasonable inferences therefrom. *Id.* We will affirm if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* Additionally, where contradictory or inconsistent testimony is presented at trial, it is up to the jury to resolve such conflicting testimony. *See Evans v. State,* 489 N.E.2d 942, 948 (Ind.1986).

### A. Theft

To convict an individual of the offense of theft, Indiana Code section 35–43–4–2 specifies the State must prove that "a person who knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use. . . ."

Here, the evidence shows that Brown took the snowmobile that was stored in Richardson's barn and drove it away. Tr. p. 247, 278–80, 289–90, 299–300, 315–17, 340–45. The evidence also demonstrates that Brown did not have permission from Gaskill—the snowmobile's owner—to take that vehicle from the barn or otherwise use it.

At trial, Richardson testified that Brown had his permission to return to the barn only "to get his tools." Tr. p. 292–93. When asked whether Brown would have had his "authorization to enter that barn for any other purpose," tr. p. 202, Richardson responded, "no ." *Id.* And Richardson specifically acknowledged that Brown did not have his permission to take the snowmobile. Tr. p. 292. Even though Brown testified that there was a "standing agreement" for him to enter Richardson's barn and borrow items such as air compressors

and expensive tools even if Richardson was not at home, tr. p. 421–22, such a conflict in the evidence was for the jury to resolve. *See Evans,* 489 N.E.2d at 948. Obviously, the jury chose to reject Brown's self-serving testimony.

Also, Brown contends that the theft conviction must be set aside because the State did not present any evidence that Brown was aware that the owner of the snowmobile was anyone other than Richardson. Hence, he argues that this absence of evidence amounted to a failure of proof that he knowingly or intentionally exerted the unauthorized control over the snowmobile. However, the evidence showed that Brown never had the owner's permission to take the snowmobile. And, as indicated above, Brown did not have Richardson's consent to remove the snowmobile from the garage. Inasmuch as the evidence demonstrated that Brown knowingly took the snowmobile without the owner's consent, we decline to set aside Brown's theft conviction, and thus conclude that the evidence was sufficient to support the conviction for theft.

### B. Operating a Vehicle After Lifetime Suspension

Brown also maintains that the conviction for Operating a Vehicle After Lifetime Suspension must be reversed for insufficient evidence. In particular, Brown urges that his conviction for this offense must be vacated because a snowmobile cannot be a motor vehicle for purposes of the habitual traffic violator statute.

The State responds—as it did in the argument above—that "there is . . . no question that a snowmobile is a 'motor vehicle.' " Appellee's Br. p. 16. It further points out that the only limitation on the definition of "motor vehicle" is that it does not include motorized bicycles pursuant to Indiana Code section 9–13–2–105(d). As

we have stated in our discussion above, a snowmobile may be considered a vehicle within the meaning of our statutes, yet the question that remains is whether Brown violated the statute when he operated the snowmobile in these circumstances.

Here, Officer Zigler presented the following testimony regarding Brown's operation of the snowmobile:

Q. Where did the snowmobile go after it left Mr. Richardson's house?

A. The snowmobile traveled around and came up through this field and we paralleled, Mr. Richardson and I, paralleled the snowmobile along the trailer courts and I believe it's somewhere in here we turned behind him and he traveled up, I'm not sure what this road is, but traveled up this (unintelligible) he traveled north.

Q. *Was he using the road?*

A. *Yes sir. He was* (unintelligible).

Q. *Did he travel along the road?*

A. *He traveled on the roadway.*

Q. Okay. And which road would he— was he on that you saw him? Did he have-did he cross this road?

A. Yes sir.

Q. *Did he travel on that road?*

A. *He traveled on this road, sir.*

Q. *East and west on that road?*

A. *Yes sir.*

Tr. p. 318 (emphasis added). Officer Zigler also testified that Brown operated the snowmobile in excess of 50 to 60 miles per hour during the chase. Tr. p. 319.

▌ In our view, the evidence demonstrating that Brown was operating the snowmobile at a speed of nearly sixty miles per hour on a public roadway was sufficient to support a conclusion that the snowmobile was a self-propelled vehicle

and, hence, a "motor vehicle" within the meaning of our statutes.[7]

Moreover, Brown was required to have a valid license to operate the snowmobile on the road. *See* I.C. § 14–16–1–20(c). Inasmuch as Brown's driver's license was suspended for life when he was operating the snowmobile, we conclude that the evidence was sufficient to support his conviction for this offense.

Finally, contrary to Brown's argument that he did not receive proper notice that his driving privileges had been suspended, it is apparent from the record that Brown knew or should have known of the suspension. In particular, Brown's certified driving record showed that his driving privileges had been forfeited for life, and that notice of the forfeiture had been mailed to him at the address that Brown provided as his residence. Tr. p. 229–31, 456. Also, Brown's driving privileges had been suspended for life on February 6, 2004, and Brown knew that they had been suspended because he testified to that fact at trial. Tr. p. 229–31. Hence, Brown's contention that his conviction for this offense must be set aside upon the theory that he did not have notice of his suspension must fail.

### VI. Sentencing

Finally, Brown contends that he was erroneously sentenced. In particular, he claims that the trial court's sentencing order was in error because the proper procedure regarding the enhancement on the habitual offender count was not followed. At the sentencing hearing, the trial court made the following remarks:

On the Habitual Criminal, the minimum is one and a half (1 ½) years, the maximum is four and a half (4½) years, certainly the aggravating circumstances

---

**7.** Had the evidence not specifically shown that Brown drove the snowmobile on the

road, our decision as to this issue may very well have been to the contrary.

still outweigh the mitigating circumstances. I'm going to sentence you to four (4) years at the Department of Corrections and Order that the sentence be served consecutively to the remaining sentences.

Tr. p. 610–11.

In support of his argument that the sentence on the habitual offender count was erroneous, Brown directs us to the following language:

We have endeavored to make it clear the statute does not constitute a separate crime for which a sentence is imposed consecutive to the sentence growing out of the underlying felony conviction. *See Yager v. State,* (1982) Ind., 437 N.E.2d 454; *Hall,* supra. Thus, for example, if a defendant is found to have committed a Class B felony and a ten (10) year sentence is imposed thereon, and he is also found to be an habitual offender, his ten (10) year sentence is enhanced by thirty (30) years and becomes a forty (40) year sentence. He is not sentenced to consecutive terms of ten (10) and thirty (30) years, however, because doing so would imply the habitual offender finding is a separate criminal act for which a second consecutive sentence is imposed. *See, Yager,* supra.

*Wilburn v. State,* 442 N.E.2d 1098, 1099 (Ind.1982). In light of the above, Brown argues that the sentencing order here is in error because the sentences on the Theft and class D felony Resisting Law Enforcement counts should have been enhanced and ordered to run concurrently with the other sentences, just as the trial court had ordered on the remaining counts. In particular, Brown notes that the trial court's comments at the sentencing hearing reflect that the four years added to the sentence on the Theft and Resisting Law Enforcement offenses were to be consecutive to the remaining sentences. Thus, Brown claims that the trial court believed that the sentence on the habitual offender count was a separate sentence, Appellant's Reply. Br. p. 4, and he asserts that the sentencing order must be corrected to reflect that all of the sentences were concurrent, including the enhanced sentences on the Theft and Resisting Law Enforcement counts. In the end, Brown asserts that the sentencing order must reflect that he was to receive a concurrent sentence of six years.

The State acknowledged at oral argument—and we agree—that the proper procedure was not followed when the habitual offender enhancement was imposed. Because we have ordered that two of the resisting law enforcement counts be vacated on remand in accordance with our discussion above, we find that the sentencing order should be corrected to reflect that the two-year sentence that was imposed on the remaining resisting law enforcement conviction—the charge that was alleged in count five of the State's information—should be enhanced by the four-year term under the habitual offender determination.

■ In a related sentencing argument, Brown urges that the trial court improperly weighed the aggravating and mitigating circumstances in arriving at the sentence because "eleven of the twelve jurors specifically requested the trial court to show leniency" to Brown as to the operating and theft convictions. Appellant's Br. p. 23. Hence, Brown argues that it was error for the trial court to have imposed any more than the presumptive sentence on these two counts.

Notwithstanding Brown's argument, we note that the trial court found—as significant aggravating circumstances—that Brown had a substantial criminal history and that he had violated the conditions of his probation by committing the instant crimes. Inasmuch as these were valid ag-

gravating factors, we find that it was appropriate for the trial court to have enhanced Brown's sentence on this basis. *See Workman v. State,* 716 N.E.2d 445, 449 (Ind.1999) (holding that a single aggravating circumstance may be sufficient to sustain an enhanced sentence). Moreover, it is apparent that Brown's argument is merely an invitation for this court to reweigh the evidence and reconsider the aggravating and mitigating circumstances that had been determined by the trial court.[8] However, inasmuch as the sentence was clearly within the range of sentences authorized by statute, we will not substitute our judgment for that of the trial court. Thus, Brown does not succeed on this claim of error.

### CONCLUSION

In light of our disposition of the issues discussed above, we conclude that the trial court properly denied Brown's request for a change of venue from the judge, and that the trial court appropriately denied Brown's motion to dismiss the operating a vehicle after lifetime suspension charge. We further conclude that the trial court properly excluded the evidence that Brown sought to offer surrounding his apprehension and arrest, and that the trial court properly refused to give the final instructions that Brown had offered. Additionally, we find that the evidence was sufficient to support Brown's convictions for theft and operating a motor vehicle after lifetime suspension. However, inasmuch as the three counts of resisting law enforcement constituted only one episode of fleeing, we remand with instructions that the trial court vacate the two convictions that were set forth in counts two and six of the charging information. Finally, we instruct the trial court upon remand to correct the sentencing order to reflect that the class D felony resisting law enforcement conviction—as was charged under count five in the information—be enhanced by four years in light of the habitual offender finding. In all other respects, the sentence stands.

The judgment of the trial court is affirmed in part, reversed in part, and this cause is remanded for a correction of the sentencing order consistent with the directives set forth in this opinion.

KIRSCH, C.J., and BARNES, J., concur.

8. The State also includes a discussion involving *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), for the premise that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Brown makes no specific argument as to the applicability of *Blakely* in this case, other than the fact that "the lone employee of the State disregarded the requests of eleven of the twelve jurors in the case." Appellant's Br. p. 24.