**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARK K. LEEMAN**
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT BOWEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 08A04-1206-CR-305 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CARROLL SUPERIOR COURT
The Honorable Kurtis D. Fouts, Judge
Cause No. 08D01-1103-FD-20

**May 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Robert Bowen (Bowen), appeals his conviction for Count I, possession of a controlled substance, a Class D felony, Ind. Code § 35-48-4-7(a); and Count II, possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(a)(1).

We affirm.

## ISSUES

Bowen raises two issues for review, which we restate as the following:

(1) Whether the trial court abused its discretion by admitting evidence obtained through execution of a search warrant; and

(2) Whether the trial judge committed error by failing to disqualify himself from the proceedings due to judicial bias.

## FACTS AND PROCEDURAL HISTORY

On March 21, 2011, Robert Glenn (Glenn) was stopped for driving on a suspended license by Officer Shane Bernhardt (Officer Bernhardt) of the Delphi Police Department. On that same day, both Glenn and Officer Bernhardt submitted their affidavits in support of probable cause to search Bowen's garage in Delphi, Indiana for firearms and methamphetamine manufacturing precursors. In his affidavit, Glenn stated that earlier in the day he had spoken to Bowen who told Glenn that he was hiding in his garage because of an outstanding warrant for his arrest. Glenn had been in the garage the previous week and saw a rifle and shotgun that Glenn had shot a month previously.

Glenn stated that Bowen had manufactured methamphetamine in the past and that he saw "empty Pyrex baking dishes, battery strips, and match strips" in the garage. (Motion to Suppress Hearing, State's Exh. 1). In his affidavit, Officer Bernhardt cited Glenn's affidavit as well as Bowen's outstanding arrest warrant and prior searches of his property that had resulted in seized guns, drugs, and stolen property.

That same day, the trial court issued a search warrant. Officer Bernhardt along with other officers from the Delphi Police Department, Carroll County Sheriff's Office, and Indiana State Police went to Bowen's garage to execute the search warrant. Carroll County Sheriff's Deputy Dennis Randle (Deputy Randle) knocked on the door of Bowen's garage and announced that police would enter if Bowen did not answer. Officers heard movement inside the garage but they entered by force because Bowen did not respond. Upon entry, Deputy Randle saw a clear jar with grayish white power inside. He also found a gold smoking pipe that was later found with marijuana residue inside. Police found approximately 80 white hydrocodone tablets, Bowen's wallet, and a set of digital scales. Bowen was later found hiding in a camper parked on the side of his garage.

On March 22, 2011, the State filed an Information charging Bowen with Count I, possession of a controlled substance, a Class D felony, I.C. § 35-48-4-7(a), and Count II, possession of paraphernalia, a Class A misdemeanor, I.C. § 35-48-4-8.3(a)(1). On August 12, 2011, Bowen filed a motion to suppress, arguing that the search warrant was not supported by probable cause because it was based on stale information. On

3

September 8, 2011, the trial court held a hearing on the motion, which it denied the following day.

On January 17, 2012, a jury trial was held. Prior to *voir dire*, Bowen renewed his motion to suppress, which the trial court denied. No further elaboration was given either by the trial court or Bowen. Before it rested its case in chief, the State moved to admit hydrocodone tablets and the smoking pipe seized from Bowen's garage into evidence. Bowen's counsel did not object. Afterward, however, the trial court stated "[w]e'll show for the record [] continuing objection [] based on the pretrial motion that was filed." (Transcript p. 117). The jury later found Bowen guilty as charged.

On May 10, 2012, the trial court held a sentencing hearing. Bowen testified at the hearing. Following his testimony, his counsel asked, "is there anything else that you want Judge Fouts to know before he sentences you?" Bowen replied as follows:

> [BOWEN]: That when Judge Fouts represented my daughter, in a case, [sic] calendar year prior to this offense, as her lawyer he mentioned something that just irked me. And I […], there was only [sic] person that had an objection to having it dismissed, those charges[,] was Judge Fouts and he didn't believe that uh. I believe Judge Fouts is biased. I don't believe it.

> [BOWEN'S COUNSEL]: Okay so you just wanted to get that out there and let the Judge know that's what you are thinking correct?

> [BOWEN]: I believe he is.

> * * *

> [STATE]: So the bottom line Mr. Bowen is that you don't believe Judge Fouts would be biased against you? And irrespective of what may have happened in the past, is that what you're telling the [c]ourt?

4

[BOWEN]:  I just don't believe Judge Fouts used the proper terminology when he was representing my daughter.

[STATE]:  I understand that.  But you don't think there's any reason um why he could not sentence you in this case do you?

[BOWEN]:  No I don't.  No I don't.

\* \* \*

[TRIAL COURT]:  He's chosen to put it on the record.  The [c]ourt doesn't harbor any biased [sic] against Mr. Bowen.

[BOWEN]:  I don't believe ...

[TRIAL COURT]:  […] this is the first time the [c]ourt is hearing anything about this uh but the [c]ourt did as I believe as the [g]uardian [a]d [l]item uh or an attorney.  Might have been as an attorney.  Uh represent the interest of his juvenile daughter in a delinquency matter.  And uh the [c]ourt withdrew from that case.  I don't know whether it's been disposed of.  I don't have any idea whether her case has been disposed of.  I don't see her here today.  So that makes me think she's placed outside the home.  Probably as a result of that case.  Um and I have a vague recollection of perhaps making some negative comments uh about her parents.  Because I felt like they were being hard on her frankly given her tender age.  Uh they felt differently.  I don't know I suppose in retrospect I don't know who was right.  Maybe they were.  Maybe I was.  I don't know.  But certainly nothing about that uh the [c]ourt's had a lot of contact with the family, CHINS cases [juvenile delinquency] cases, and other cases.  So that's not uh at all on the [c]ourt's mind as we go forward today but um nothing's been filed throughout this case uh alleging there was any kind of problem and uh the [c]ourt didn't see that there was any potential even for a conflict in this matter.

[BOWEN]:  To answer your question Mr. District Attorney I just didn't understand the example that Judge Fouts made at that time as her lawyer.  But I don't recognize her as a poltergeist.  I don't recognize an entity.  But I don't recognize a[n] extraterrestrial.  I do recognize God with good question in the [c]ourt's [sic] in this land but I just don't recognize those three terms.

5

[TRIAL COURT]: I'm not sure where to go with that but I guess my point is […] that I appreciate that [the State is] trying to make a record, but I just feel like with Mr. Bowen's sitting I'm gonna about [sic] to pronounce sentence on him, that's a heck of time [sic] to ask him whether he thinks I'm a good guy.

(Sentencing Tr. pp. 12-15). No further inquiry regarding the trial court's purported bias thereafter occurred. Subsequently, the trial court reviewed mitigating and aggravating factors before pronouncing sentence. It found Bowen's criminal history to be an aggravating factor and his military service, health, undiagnosed mental illness, and the hardship on his family resulting from incarceration as mitigating factors. The trial court sentenced Bowen to three years on Count I and one year on Count II, with sentences to run concurrently.

Bowen now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Bowen asserts that the trial court erred in denying his motion to suppress evidence seized during the execution of a search warrant. Because Bowen appeals following a conviction, the issue is more appropriately framed as whether the trial court properly admitted the evidence at trial. A trial court has broad discretion in ruling on the admissibility of evidence. *Fentress v. State*, 863 N.E.2d 420, 422-23 (Ind. Ct. App. 2007). Accordingly, we will reverse an evidentiary ruling only when the trial court abuses that discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

### I. *Waiver*

6

On appeal, Bowen argues that the affidavits submitted by the police failed to establish probable cause for the search warrant based upon Glenn's credibility, the reliability of his information, and the staleness of his observations. As a result, Bowen contends that the hydrocodone pills were discovered and seized in violation of the Fourth Amendment to the United States Constitution, Article 1, Section 11 of the Indiana Constitution, and the hearsay requirements for issuance of a search warrant pursuant to I.C. § 35-33-5-2(b). He also asserts that seizure of the hydrocodone pills cannot be justified by good faith reliance upon the search warrant by the police. However, the State argues that Bowen has waived these arguments because his trial counsel failed to make timely objections to evidence regarding the hydrocodone pills. We agree with the State.

To preserve an error for review on appeal, the specific objection relied upon on appeal must have been stated in the trial court as a basis for the objection. *Hale v. State*, 976 N.E.2d 119, 123 (Ind. Ct. App. 2012). The purpose of this rule is to give the trial court the opportunity to evaluate the objection under the basis relied upon. *Id*. Prior to trial, Bowen filed a motion to suppress invoking the Fourth Amendment and Section 11 to suppress all evidence obtained through execution on the grounds of staleness. At the hearing on the motion, Bowen confined his argument to the staleness of Glenn's observations and Officer Bernhardt's specification that Bowen was a serious violent felon in possession of firearms. The trial court denied the motion and did so again when Bowen renewed his motion to suppress, but made no additional argument, during *voir dire*. By failing to state these grounds to the trial court, we therefore conclude that

7

Bowen has waived his argument on appeal regarding Glenn's credibility, the reliability of his information, compliance with I.C. § 35-33-5-2(b), staleness, good faith reliance on the warrant by the police, and his challenge under Section 11. *See Owensby v. Lepper*, 666 N.E.2d 1251, 1254 (Ind. Ct. App. 1996), *reh'g denied*.[1]

Further, a pre-trial motion to suppress does not preserve an error for appellate review; the defendant must make a contemporaneous objection sufficient to preserve the issue for appeal. *Berry v. State*, 574 N.E.2d 960, 965 (Ind. Ct. App. 1991), *trans. denied*. The failure to make such an objection waives any claim on appeal that the evidence was improperly admitted. *See Brown v. State*, 783 N.E.2d 1121, 1125 (Ind. 2003). Even when lodging a continuous objection to evidence ruled admissible at a suppression hearing, waiver results when counsel makes "no objection" to such evidence at trial. *See Hayworth v. State*, 904 N.E.2d 684, 693-94 (Ind. Ct. App. 2009). Before it rested its case in chief, the State moved to admit the hydrocodone pills seized from Bowen's garage into evidence. When asked by the trial court if he had any objection to the admission of such evidence, Bowen's trial counsel clearly stated "No judge not to this." (Tr. p. 116). Notwithstanding the trial court's identification of a continuing objection *after* the evidence was admitted, we deem this insufficient to overcome trial counsel's failure to object when the evidence was offered. *See Hayworth*, 904 N.E.2d at 693.

## II. *Staleness*

---

[1] Likewise, by raising the issue for the first time in his reply brief, Bowen has waived his argument regarding the specificity of the warrant authorizing the search for any manner of firearms. *See Ashworth v. Ehrgott*, 982 N.E.2d 366, 376 n.3 (Ind. Ct. App. 2013).

Waiver notwithstanding, we address Bowen's claim that the "the portion of the warrant authorizing the search of methamphetamine precursors was also invalid because it was based on stale information." (Appellant's Br. p. 14). In general, stale information will not support a finding of probable cause. *See Smith v. State*, 953 N.E.2d 651, 659 (Ind. Ct. App. 2011), *trans. denied*. Our courts have not established a bright-line rule regarding the amount of time that may elapse between obtaining the facts upon which the search warrant is based and the issuance of the warrant. *Id.* Instead, whether the information is tainted by staleness must be determined by the facts and circumstances of each particular case. *Id.*

Here, Glenn observed the Pyrex baking dishes, battery strips, and match strips in Bowen's garage one week before the execution of the search warrant. Officer Bernhardt, based on his training and experience, identified these items as precursors to methamphetamine manufacture. At the same time, Glenn also observed firearms in the garage which he had used a month earlier. Bowen argues that the items identified by Glenn were "presumably small […] and easily disposed of." (Appellant's Br. p. 15). However, the identified precursors and firearms were not money or drugs, items that are easily consumed. *See Foster v. State*, 633 N.E.2d 337, 345 (Ind. Ct. App. 1994), *trans. denied*. Bowen also argues that the facts contradict Officer Bernhardt's assertion that methamphetamine manufacture is an ongoing process. That Officer Bernhardt failed to find methamphetamine at Bowen's garage one year previously does not necessarily suggest an isolated incident. *See Breitweiser v. State*, 704 N.E.2d 496, 500 (Ind. Ct. App.

9

1999).  We therefore conclude that the information here was not too stale to support a finding of probable cause.  *See Raymer v. State*, 482 N.E.2d 253, 255 (Ind. 1985).  The trial court did not abuse its discretion in admitting the hydrocodone pills seized pursuant to a search warrant.

### III.  *Judicial Bias*

Bowen also argues that the trial court erred when the trial judge refused to recuse himself at sentencing.  He contends that the trial judge, who represented Bowen's daughter in a prior juvenile action, was biased against him.  Bowen asserts that this purported bias resulted in the trial court ascribing lesser weight to a contested mitigating factor, namely, whether Bowen's incarceration would pose a hardship on his family.

We first note that Bowen failed to object or move for recusal and has thus waived the issue.  *See Carr v. State*, 799 N.E.2d 1096, 1098 (Ind. Ct. App. 2003).  Timeliness is important on recusal issues.  *Id*.  A party may not lie in wait and only raise the recusal issue after receiving an adverse decision.  *Id*.  Waiver notwithstanding, Bowen argues that fundamental error occurred and recusal was mandatory.  To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible.  *Ruggieri v. State*, 804 N.E.2d 859, 863 (Ind. Ct. App. 2004).  To be fundamental, the error must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.  *Id*.

10

Bowen's argument relies on Ind. Judicial Conduct Cannon 2, Rule 2.11(A), which provides that under certain circumstances "a judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Two such circumstances exist where the judge:

> has a personal bias or prejudice concerning a party or personal knowledge of facts that are in dispute in the proceeding.
>
> [or]
>
> served in governmental employment and in such capacity participated personally and substantially as a lawyer or public official concerning the proceeding or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy.

Jud. Cond. Cannon 2, Rule 2.11(A)(1)&(6)(b). Under such circumstances, the obligation to recuse is required whether or not a motion for recusal is filed. *See* Jud. Cond. Cannon 2, Rule 2.11, cmt. 2. Further, the "appearance of bias and partiality requires recusal just as does the actual existence of those impediments." *Thakkar v. State*, 644 N.E.2d 609, 612 (Ind. Ct. App. 1994). The question is "whether an objective person, knowledgeable of all the circumstances, would have a rational basis for doubting the judge's impartiality." *Id*.

Unless the evidence suggests otherwise, we assume the trial judge would have disqualified himself had his impartiality been reasonably called into question. *Austin v. State*, 528 N.E.2d 792, 794 (Ind. Ct. App. 1998). Merely because the trial judge once argued a case against a defendant "does not compel a determination that the trial judge harbored any bias or prejudice." *Brown v. State*, 830 N.E.2d 956, 962 (Ind. Ct. App.

11

2005). During his sentencing hearing, Bowen told the trial court that he believed the trial judge was biased. However, when pressed by the State to clarify whether he believed that the judge could not sentence him, Bowen replied, "No I don't. No I don't." (Sentencing Tr. p. 13). The trial court then confirmed its prior involvement with Bowen's daughter, either as a guardian ad litem or an attorney, and stated that it was not biased.

Bias or prejudice exists when the trial judge has expressed an opinion on the merits of the controversy before him. *See Wallace v. State*, 486 N.E.2d 445, 456 (Ind. 1985), *reh'g denied, cert. denied*, 478 U.S. 1010 (1986). However, "[t]rial judges may consider the conduct and attitude of the defendant when imposing sentence." *Hollins v. State*, 679 N.E.2d 1305 (Ind. 1997). The trial court proceeded to find four factors in mitigation, including that incarceration would pose a hardship on Bowen or his dependents. It attributed less weight to that factor because the hardship resulted, to some extent, from Bowen's conduct. The trial court stated that Bowen's incarceration would be "in some level [a] calming influence perhaps if he's absent for a period of time." (Sentencing Tr. p. 26). Any negative comments by the trial court regarding Bowen's character and the effect his incarceration may have on his family during sentencing do not establish bias. *See id*.

Finally, Bowen was sentenced to the maximum term of three years on Count I. However, a maximum sentence for an offense does not reflect bias *per se*. *See Radcliff v. State*, 579 N.E.2d 71, 73 (Ind. 1991). This finding was well supported by evidence of

12

Bowen's prior criminal history, which included probation violations and pending felony charges. In light of the foregoing, we do not conclude that an objective person, knowledgeable of all the circumstances, would have a rational basis to doubt the trial judge's impartiality. *See Brown*, 830 N.E.2d at 962.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting evidence seized pursuant to a search warrant and that the trial judge did not commit error by failing to disqualify himself from the proceedings due to judicial bias.

Affirmed.

BAKER, J. and BARNES, J. concur