**Sharon EVANS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 783S272.**

Supreme Court of Indiana.

March 12, 1986.

William L. Soards, Soards & Carroll, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant Sharon Evans was tried before a jury and found guilty of murder and of conspiracy to commit murder. She received forty year sentences for both convictions, to be served concurrently.

Appellant raises eight issues in this direct appeal:

(1) Whether the evidence is sufficient to sustain her convictions;

(2) Whether the trial court erroneously instructed the jury that she had withdrawn her plea of not guilty;

(3) Whether the trial court wrongly refused defendant's tendered instructions on lesser included offenses;

(4) Whether the trial court erred by disallowing polygraph evidence;

(5) Whether the trial court's refusal to appoint private counsel at public expense constituted a denial of due process;

(6) Whether the trial court erred by denying her motion for a continuance of the trial;

(7) Whether the trial court should have set aside the jury verdict because she was not competent to stand trial; and

(8) Whether the State knowingly used perjured testimony.

We affirm.

These are the facts which tend to support the trial court's judgment. Appellant lived with her husband, Claude Evans, and her two sons, Phillip and Craig Wade. In the early morning hours of July 31, 1982, Claude Evans sustained multiple injuries: lacerations, contusions, and fractures on his face and head. There were also stab wounds on his face and head. The nature and extent of the injuries sustained initially led the police to conclude that Claude had shot himself in the head. However, the cause of death was blunt trauma to the head and face. A pathologist testified that a three foot pipe could have caused the injuries.

Appellant and her husband had been experiencing marital difficulties. Mrs. Evans had complained about their financial situation and Claude's sexual impotency during the nine months preceding his death.

Claude's death would have solved the former problem. As beneficiary of the victim's life insurance policy Evans was entitled to $15,500. Claude's medical policy covered his wife and dependent children in the event of his death. His death would also trigger pension benefits to a surviving spouse each month for the rest of her life. Since the victim was a disability retiree, Mrs. Evans would also receive monthly payments until her remarriage or until she reached the age of sixty-two. As surviving spouse Mrs. Evans was entitled to a total of $86,576.64 in employment-related benefits if she lived to the age of seventy.

Phillip Wade heard his mother state on two or three separate occasions that she wanted one Michael Todd Downs to kill her husband. Phillip did not realize the seriousness of his mother's statements until after the plan had been consummated.

In April, 1982, Craig Wade first approached Downs with his mother's proposal to kill Claude. In the ensuing months Downs was similarly approached on six to eight different occasions. In May and June, Craig relayed his mother's offer to pay Downs $1200 to kill her husband. The plan was to make it look like a murder which occurred during the course of a robbery. Payment would be made after she received financial benefits payable upon Claude's death. On July 4th, appellant gave Craig a gun to take to Downs.

In late July appellant told Phillip that her husband was going to put the house, car, and insurance policy in his daughter's name. The victim also intended to make his daughter, Donna Shelton, the beneficiary of his life insurance policy on August 1. At 7 p.m. on July 30th, Mrs. Evans told Downs that Claude had to be dead by the end of the weekend since her husband was going to remove her as beneficiary of his life insurance policy. Downs came to the Evans's house at 10 p.m. that evening, ostensibly to help Phillip deliver his newspapers early the next morning. At 2:50 a.m., appellant, Phillip, and Craig left the house to help Phillip deliver his newspapers. When they returned home a couple hours later, Downs came up from the basement, entered the kitchen, and told Mrs. Evans, "He's dead." Appellant drove Downs home shortly thereafter; during the ride, Downs deposited a lead pipe in a dumpster in an alley.

Officer Don Wright investigated the crime. Appellant told Wright that someone had apparently entered the premises while she and her sons were delivering papers and murdered her husband. A crime lab evidence technician for the police department testified that they did not find any evidence of forced entry. Downs told Wright that he took a three-foot steel pipe and struck the victim's head. There were several steel pipes, three to five feet long, in a crawl space in the basement of the Evans's house.

### I. Sufficiency of the Evidence

Appellant argues that the evidence did not establish that she conspired with anyone to commit murder or that she acted in any manner to cause the death of her husband.

██ When confronted with a sufficiency issue, this Court does not weigh the evidence or judge the credibility of the witnesses. Rather, we consider only that evidence most favorable to the State and all reasonable inference to be drawn therefrom. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt, the judgment must be affirmed. *Downs v. State* (1985), Ind., 482 N.E.2d 716. This same standard prevails when the evidence is circumstantial. *Collins v. State* (1980), 274 Ind. 619, 413 N.E.2d 264. The trier of fact may reach a verdict based solely on circumstantial evidence. *Survance v. State* (1984), Ind., 465 N.E.2d 1076. The evidence recited in the statement of facts is clearly sufficient to support appellant's convictions.

### II. Withdrawal of Guilty Plea

██ Appellant argues that the trial court erred by refusing to give the jury a prelimi-

nary instruction indicating that she pleaded both not guilty and not guilty by reason of insanity. She maintains that the trial judge advised the jury prior to the completion of the case that she was withdrawing her plea of not guilty and thus prevented the jury from paying proper attention to subsequent evidence which would have supported a plea of not guilty.

Preliminary instruction number two charged the jury that the defendant had entered a plea of not guilty. The jury did not receive a preliminary instruction on insanity because the defendant did not file her notice to interpose an insanity defense until later in the trial. A hearing was held after Evans filed her insanity notice, during which defense counsel argued that Evans now had an additional plea of not guilty by reason of insanity and was not withdrawing her former plea of not guilty. The court did not want to give both instructions but rather preferred to charge the jury that the defendant has now changed her plea. However, when the jury returned the trial judge informed them:

> On Friday, January the 14th, 1983, counsel for the defendant, Sharon Evans, filed a motion giving notice of a plea of not guilty by reason of insanity. And, this normally would have been given to you in your preliminary instructions. So, consider this to be *in addition to those preliminary instructions that I have given you.* Additional instructions will be given to you on this point, as final instructions. (Emphasis added).

Counsel characterizes this instruction as an advisement to the jury that defendant withdrew her plea of not guilty. The judge did not so inform the jury. This instruction did not foreclose the possibility of a finding of not guilty. The jury was later instructed on the alternative verdicts available when an insanity defense is raised, one of which is "not guilty".

### III. Lesser Included Offenses

Appellant argues that the trial court erroneously refused to charge the jury with the following tendered instructions: temporary mental incapacity, involuntary manslaughter, reckless homicide, recklessness, deadly weapon, and assisting a criminal. She maintains that the evidence supported charging the jury that these crimes constituted lesser included offenses of murder.

■ The court refused defendant's tendered instruction number two, which recited that temporary mental incapacity resulting from alcohol may prevent the defendant from being able to form the necessary specific intent. However, final instruction number thirteen informed the jury that they must find beyond a reasonable doubt that the defendant had the specific intent to commit the crime and further recited that intoxication, either drug or alcohol induced, could render a person incapable of forming a specific intent. If there is evidence of intoxication at the time of the offense, the jury was charged to consider this in determining whether defendant had specific intent. The substance of defendant's tendered instruction was adequately conveyed by this final instruction. *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836.

■ A person who kills another human being while committing or attempting to commit a statutorily permitted underlying offense commits involuntary manslaughter. Ind.Code § 35–42–1–4. Battery is one such underlying offense. Appellant tendered and subsequently withdrew a battery instruction. At trial appellant testified that she did not discuss murdering her husband with Downs and she also denied killing him. This instruction was properly refused since the evidence adduced at trial did not justify an instruction on the putative lesser offense. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208.

■ Assuming *arguendo* that the offense of reckless homicide may, under certain circumstances, be an included offense of murder, the trial court properly refused this instruction since the only substantive evidence presented at trial was that appellant intended to have her husband killed.

Without any evidence of reckless acts, there is no basis for a charge on recklessness. Similarly, since appellant withdrew her battery instruction (which indicated that there was a higher penalty for battery with a deadly weapon) there was no purpose in an instruction which defined deadly weapon.

■ A comparison of the relevant statutes indicates that assisting a criminal is not a lesser included offense of murder. Ind.Code § 35–42–1–1 and Ind.Code § 35–44–3–2. *Reynolds v. State* (1984), Ind., 460 N.E.2d 506. In addition, the factual allegations recited in the charging instructment did not allege any conduct by defendant that would have comprised the offense of assisting a criminal. The trial court properly refused appellant's tendered instructions.

### IV. Polygraph Testimony

Appellant argues that the trial court erred by disallowing polygraph evidence.

The State was granted an order *in limine* under which defense counsel was prohibited from mentioning polygraphs or referring to polygraph tests which may or may not have been offered to any witness. Subsequently, the defense requested modification of the order *in limine* to enable two defense witnesses to testify that a polygraph test had been offered to one defense witness who agreed to take the test. The purpose of this testimony was to enhance the credibility of the defense witness who allegedly would have impeached the testimony of Phillip Wade.

■■ The results of a polygraph examination of a witness or party are inadmissible in a criminal prosecution absent a waiver or stipulation by the parties. This rule also prohibits testimony that a witness or party was either offered or administered a polygraph. *Reese v. State* (1983), Ind., 452 N.E.2d 936. The trial court does not possess any discretion to admit or to exclude polygraph evidence until a proper waiver or stipulation has been made. *Dean v. State* (1982), Ind., 433 N.E.2d 1172. Since the

parties had not entered into such a stipulation here, the trial court properly refused appellant's requested modification of the order *in limine*.

### V. Appointment of Counsel

■ Appellant argues that the trial court's refusal to appoint private counsel at public expense constituted a denial of due process.

On August 3, 1982, private counsel Davenport filed his appearance on behalf of the defendant. On October 13, 1982, appellant moved the court to appoint Davenport, and his law partner, Taylor, as pauper counsel on her behalf. In this motion appellant recited that probate had tied up her assets except for a small income from social security.

The right to counsel in a criminal proceeding does not mean that the defendant has the absolute right to be represented by counsel of her choice. *Jefferson v. State* (1985), Ind., 484 N.E.2d 22. The trial court properly refused her request.

### VI. Motion for a Continuance

Appellant argues that the trial court abused its discretion by denying her motion for a continuance of the trial.

On November 12, 1982, defense counsel moved for a continuance of the trial. This motion was predicated upon defense counsel Taylor's conflict with another cause and the need for a sufficient time to prepare for trial. Evans' trial was scheduled to commence on November 29, 1982, and Taylor told the court that he was scheduled for a jury trial "for at least the week of November 30th through and including December 2nd." In an amended motion filed November 16th, appellant stated that Davenport needed the services of Taylor since Davenport had not previously represented a defendant in a jury trial of a felony offense. Appellant maintains that denial of this motion was prejudicial and prevented counsel from adequately representing her.

The granting or denying of a motion for continuance based upon nonstatutory grounds is within the discretion of the trial court. The record must reveal that the defendant was prejudiced by the failure to grant the continuance in order to demonstrate an abuse of discretion. *Dudley v. State* (1985), Ind., 480 N.E.2d 881. The record indicates that the present trial did not actually commence until January 10, 1983, and that both Davenport and Taylor were present. The trial court did not abuse its discretion.

### VII. Competency to Stand Trial

Appellant argues that the trial court should have set aside the jury verdict based upon her testimony at the sentencing hearing that she had not been competent to stand trial.

On October 13, 1982, appellant filed a motion for mental examination suggesting that she was incompetent to stand trial and assist in the preparation of her defense. At a subsequent competency hearing held on January 12, 1983, two court-appointed doctors testified that Sharon Evans did have the capacity to understand the nature of the charges against her, to assist in the preparation of her defense, and to stand trial. Both doctors examined appellant on two different occasions (including examinations in early January, 1983) before rendering their medical opinion. Sharon Evans also testified at the competency hearing that she now felt competent to stand trial although at the time the motion was filed she did not. The trial court determined that she was competent to stand trial.

The sentencing hearing was held on March 11, 1983. At this hearing, appellant testified that she was not competent to stand trial because she now recalled things which could have helped her at trial. She maintains that the trial court should have found her to be incompetent to assist in her defense as a result of this testimony and set aside the jury's verdict.

A competency hearing is required only when there is evidence before the trial court that creates a reasonable and bona fide doubt as to the defendant's competency. The presence of indicators sufficient to require the court to hold a hearing lies within the province of the trial judge and will not be disturbed absent an abuse of discretion. *Perry v. State* (1984), Ind., 471 N.E.2d 270. Reasonable grounds to believe that a defendant may be incompetent may become apparent to the trial court at any stage of the proceedings. *Mato v. State* (1982), Ind., 429 N.E.2d 945. However, loss of memory is not a basis for the determination that the defendant is incapable of adequately assisting her defense. *Ritchie v. State* (1984), Ind., 468 N.E.2d 1369. At the sentencing hearing, the judge conversed with Evans to determine why she felt she had not been competent to stand trial. The judge also listened to her trial testimony and observed her demeanor. We are not able to say that he abused his discretion solely based upon Evans's testimony at her sentencing hearing.

### VIII. Perjured Testimony

Appellant argues that she was denied a fair trial because the prosecutor used perjured testimony. She maintains that when the State called Craig Wade as a witness the State knew or should have known that his trial testimony would conflict with his prior statements. She claims, therefore, that the State knew that Wade's testimony would be false and was used solely to inflame the jury against her.

The knowing use of perjured testimony is fundamentally unfair and a conviction obtained by the use of such testimony will not be upheld. *Sypniewski v. State* (1980), 272 Ind. 657, 400 N.E.2d 1122. However, contradictory or inconsistent testimony by a witness does not constitute perjury. *Wallace v. State* (1985), Ind., 474 N.E.2d 1006. The jury, as fact finder, has the duty to resolve conflicting testimony.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.