# FOR PUBLICATION



FILED
Nov 24 2014, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS P. KELLER**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| ANTONIO SMITH, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 71A04-1312-CR-609 |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Elizabeth C. Hurley, Judge
Cause No. 71D08-1303-FC-58

**November 24, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Antonio Smith appeals his conviction for burglary, as a Class C felony, following a jury trial. He presents two issues for our review, but we address a single dispositive issue, namely, whether his conviction was obtained by the State's knowing use of perjured testimony at his trial. In particular, Nicole Greenlee, Smith's former girlfriend, testified that Smith had committed the burglary while she hid outside in the bushes to serve as a lookout. But previously Greenlee had been convicted of the same crime on a guilty plea. Greenlee stated under oath, as the factual basis for her plea, that it was she who had broken and entered the building and committed the burglary, and she did not implicate Smith. The State also introduced at Smith's trial a surveillance video and a detective's testimony that a white female had committed the burglary. Greenlee is white, and Smith is African-American.

We conclude that the State was aware of a high probability that if Greenlee were called as a witness against Smith she would commit perjury and that Greenlee perjured herself at Smith's trial. In particular, in its opening statement the State informed the jury that Greenlee would give two versions of the burglary, and the State granted immunity to Greenlee for her guilty plea testimony prior to her trial testimony. And after Greenlee had testified, the State did not correct the perjury. A conviction based on the knowing use of perjured testimony constitutes a denial of due process, and the error here was not harmless. Thus, we reverse Smith's conviction.

**FACTS AND PROCEDURAL HISTORY**

Early in the morning of December 19, 2012, a person wearing a mask, two hooded sweatshirts, and gloves broke into a Dollar General store in Mishawaka and stole approximately $3,500 in cash. Video surveillance revealed that the burglar was a white female.[1] On December 28, police investigating the burglary questioned Greenlee, a white female employee of the Dollar General store, who ultimately confessed to the burglary. At one point during the investigation, Greenlee named Smith, her boyfriend at the time, and another woman as accomplices in the burglary, but police concluded that Greenlee had acted on her own. The State charged Greenlee with burglary, as a Class C felony. Greenlee pleaded guilty and, during her plea hearing on May 6, 2013, she testified under oath that she had broken and entered the Dollar General store with the intent to commit theft, she had opened the door to get inside, and she had disarmed the alarm system using the code. During that hearing, Greenlee did not testify that Smith or anyone else helped her commit the burglary.

In the meantime, and before Greenlee's guilty plea hearing, on March 25, 2013, the State charged Smith with burglary, as a Class C felony, for committing the same December 19 burglary of the Dollar General store. The court held Smith's trial on July

---

[1] At Smith's trial, South Bend Police Department Detective Timothy Wiley, testified that,

> even though the suspect was covered head to toe and had a mask on their face [sic], they [sic] appeared to move like a female and from some of the exposed skin that I saw on the suspect's backside when they [sic] were leaned over, it was my opinion that the suspect was a female white.

Tr. at 89. The State offered no other opinion to contradict Detective Wiley's testimony, and our review of the video comports with his conclusion.

30, after Greenlee had pleaded guilty. During its opening statement at Smith's trial, the State told the jury

> [y]ou're also going to hear [Greenlee] give two different versions of what happened. When she first talked to the police, you're going to hear that she took the blame for being the one inside the store saying she was the one that [sic] went in, that's her on the tape, that [Smith] was outside in the bushes.
>
> You're probably also going to hear her sit right up here today and sit on the stand and tell you something different. What she's probably going to tell you is that she was outside in the bushes and that [Smith] was inside, and you're going to hear about the factors that may contribute to that change in story and that's something you're going to have to deal with at the end of this process.

Tr. at 8-9 (emphases added). After the State concluded its opening statement, defense counsel requested a side bar conference regarding Greenlee's proposed testimony. Defense counsel advised the trial court that, during her guilty plea hearing, Greenlee had "made a factual basis under oath that she was the one who went into the store." Id. at 10. Thus, defense counsel argued, Greenlee would commit perjury if she testified that Smith was the person who had entered the store. The trial court concluded that Greenlee's attorney should be present before she testified because of "potential criminal ramifications" of her testimony. Id. at 14.

After Greenlee's attorney arrived, the trial court addressed defense counsel's concerns about Greenlee's possible perjury and the following colloquy ensued:

> COURT: And so I guess just for discussion purposes, that would lead me to think that if she does testify as to Mr. Smith's involvement, that wouldn't be perjurious statements [sic] because she has never made statements under oath before about Mr. Smith's involvement. I don't know that she was ever asked if she acted alone or anything of that nature. So I don't believe she was. So there may be things that are contradictory to what she said at the plea hearing for sure, but without hearing what she's going to testify to, I

4

> don't know that I'm in any position or any of us are in any position as of yet to determine which testimony is the truthful testimony.
>
> DEFENSE COUNSEL: Perhaps then, Judge, we could, after she's done testifying, could we take a break and then discuss matters at that point?
>
> COURT: We can take a break after she testifies, yes.

Id. at 23-24 (emphasis added). And the State advised the trial court that it was granting Greenlee "use immunity" from prosecution for perjury with respect to her guilty plea testimony. Id. at 26. The trial court then allowed the parties to examine Greenlee in the presence of the jury.

On direct examination by the State, Greenlee testified that Smith had broken and entered the Dollar General store and stole the money while she acted as a lookout outside the store. Greenlee testified further that, at her guilty plea hearing, she had testified under oath that she was the person who entered the store and stole the money because she "just wanted to get this whole process done and over with." Id. at 45. And she testified that, during the "guilty plea process," she was not asked whether Smith was involved in the burglary. Id. Greenlee further explained that she had given police "multiple versions of this series of events" because she and Smith "were in a relationship and [she] really didn't want to see him" arrested. Id. at 47. And Greenlee testified that, while she was in jail after her arrest, Smith had called her and asked her whether he should turn himself in.[2] An audio recording of that phone conversation was played for the jury.

---

[2] The trial court clerk did not include a copy of the recording of the phone call in the exhibits folder on appeal, but the State does not contest defense counsel's remarks in closing argument that Smith offered to turn himself in in the context of "being reassuring to Nicole who [was] crying on the phone." Tr. at 134. Smith did not surrender to police or otherwise confess to having been either a principal or an accomplice in the burglary.

5

At the conclusion of Greenlee's testimony, defense counsel moved for a mistrial. In particular, defense counsel argued that Greenlee had just perjured herself; the State knew that Greenlee had intended to give perjured testimony; and that "a case with perjury that is known about will be overturned on appeal." Id. at 66. The trial court concluded that Greenlee's statements were merely inconsistent and that she had given explanations for those inconsistencies. Accordingly, the trial court denied Smith's motion for a mistrial.

Following Greenlee's testimony, the State called South Bend Detective Timothy Wiley and offered into evidence the video surveillance recordings[3] from the burglary. As noted above, Detective Wiley testified that the video evidence shows a white female acting as the only person inside the store during the burglary. Detective Wiley also testified that the cell phone records of Smith and Greenlee show that they were located near each other and were communicating with each other during the course of the burglary. But, on cross-examination, Detective Wiley admitted that he had no way to know the actual locations of each cell phone during the burglary. The jury found Smith guilty as charged. The trial court entered judgment and sentence accordingly. This appeal ensued.

**DISCUSSION AND DECISION**

In Wallace v. State, 474 N.E.2d 1006, 1008 (Ind. 1985), our supreme court stated:

The knowing use of perjured testimony is fundamentally unfair and a conviction obtained by the use of such testimony will not be upheld. Sypniewski v. State, 272 Ind. 657, 400 N.E.2d 1122 (1980); Richard v. State, 269 Ind. 607, 382 N.E.2d 899 (1978). A conviction obtained through

---

[3] The video was taken from three surveillance cameras inside the store.

6

> the use of false testimony must fall where the State, knowing the testimony to be false, either solicits such testimony or allows it to go uncorrected when it appears. Napue v. Illinois, 360 U.S. 264 (1959); Sparks v. State, 271 Ind. 419, 393 N.E.2d 151 (1979).

Thus, the dispositive question here is whether Smith's conviction was obtained through the knowing use of perjured testimony.

### Smith Preserved This Issue for Our Review

Initially, we reject the State's contention that Smith has waived this issue for failing to make a contemporaneous objection to the offending testimony. A contemporaneous objection affords the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced. Jackson v. State, 735 N.E.2d 1146, 1152 (Ind. 2000). Here, after the State finished its opening statement, defense counsel requested a sidebar conference and argued that, because Greenlee had previously testified under oath that she was the principal in the burglary, her proffered testimony at Smith's trial was "going to be perjury one way or the other." Tr. at 10. After it was decided that Greenlee would testify once her attorney was present, defense counsel asked the trial court whether they could "take a break and then discuss matters" after Greenlee's testimony, and the trial court agreed. Id. at 24. At the conclusion of Greenlee's testimony, defense counsel moved for a mistrial.[4]

Defense counsel made clear during the lengthy sidebar conference—which preceded Greenlee's testimony—that Greenlee previously had testified at her guilty plea hearing that she was the principal in the burglary but would testify at Smith's trial that he

---

[4] We note that Smith has not waived this issue for failure to request an admonishment before his motion for mistrial. No admonishment would have cured the due process violation in this case. And "[w]here it is obvious . . . that no admonishment could suffice, the motion for one may be dispensed with." Dresser v. State, 454 N.E.2d 406, 408 (Ind. 1983).

7

was the principal. The trial court declined to rule on that objection because, as the court stated, "I don't know that I'm in any position . . . as of yet to determine which testimony is the truthful testimony." Id. There is no question that the trial court and the State were aware that Smith objected to Greenlee's perjured testimony both before and after she testified. The trial court was afforded the opportunity to make a final ruling on the matter in the context in which the evidence was introduced. See Jackson, 735 N.E.2d at 1152. We hold that defense counsel adequately preserved the issue for our review.

Whether Greenlee Committed Perjury

Smith contends that, in light of Greenlee's testimony at her guilty plea hearing that she was the one who had broken and entered the Dollar General store, Greenlee committed perjury when she testified at Smith's trial that, instead, Smith had broken and entered the store while Greenlee waited outside. To determine whether Greenlee gave perjured testimony, we look to Indiana Code Section 35-44.1-2-1.[5] That statute provides in relevant part that:

(a) A person who:

(1) makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true; or

(2) has knowingly made two (2) or more material statements, in a proceeding[6] before a court or grand jury, which are inconsistent to the degree that one (1) of them is necessarily false;

---

[5] We note that neither party cites the perjury statute to support the arguments on appeal.

[6] It is well established that where a statute uses "the singular only" it may also apply to the plural. I.C. § 1-1-4-1(3). The clear purpose of subsection (a)(2) is to prohibit irreconcilable testimony given under oath whether in the same or different proceedings.

8

commits perjury. . . .

(Emphasis added).

At her guilty plea hearing, Greenlee testified under oath that she had knowingly broken and entered the Dollar General store with the intent to commit theft. In particular, Greenlee testified that she had gained entry into the store when she "opened the door to get in" and "punched in a[n alarm] code." Def. Ex. A at 4-5. But at Smith's trial, Greenlee testified under oath that it was Smith who had broken and entered the store while she waited outside and acted as a lookout. These two versions of the burglary that Greenlee gave under oath, first at her guilty plea hearing and then at Smith's trial, are inconsistent to the degree that one of them is necessarily false. Accordingly, we hold that Greenlee committed perjury as a matter of law pursuant to Indiana Code Section 35-44.1-2-1(a)(2).

But the State contends that Greenlee did not commit perjury because her guilty plea testimony was merely inconsistent with her trial testimony, and that "contradictory or inconsistent testimony by a witness does not constitute perjury." Appellee's Br. at 8. In support of its contention, the State relies on Timberlake v. State, 690 N.E.2d 243 (Ind. 1997) and Evans v. State, 489 N.E.2d 942 (Ind. 1986). In Timberlake, the defendant

> contend[ed] that the prosecutor committed misconduct by knowingly using the false testimony of John Robbins, Richard McPeake, and Roy Hood. Defendant's arguments concerning the three witnesses are as follows: (1) Shortly after the shooting, John Robbins gave a statement to the police that he had seen McElroy and defendant in his bar two days before the shooting and that he had heard McElroy tell Jim Gross (a patron) that, "The only good cop is a dead cop." (R. at 5204.) At trial, the State called Robbins as a witness, and he testified that defendant had made the anti-police statement; (2) At trial, Richard McPeake testified that he saw defendant, while sitting on the trunk of the car, pull a gun. Defendant asserts that this

9

statement cannot possibly be true; (3) Roy Hood's testimony contains inconsistencies which defendant claims show his testimony to be false and fabricated.

690 N.E.2d at 252-53. Our supreme court held that "while the prosecutor presented witnesses who gave inconsistent accounts, there is no evidence that the prosecutor knowingly used false testimony." Id. at 253. Thus, in Timberlake, because the defendant did not prove that the witnesses had committed perjury under the first subsection of the perjury statute, the prosecutor did not knowingly use false testimony. See I.C. § 35-44.1-2-1(a)(1) (a person who makes a false, material statement under oath knowing the statement to be false or not believing it to be true commits perjury). Likewise, the defendant in Evans alleged perjury under the first subsection of the perjury statute, which the court rejected.

But here, unlike in Timberlake and Evans, Greenlee committed perjury under the second subsection of the perjury statute. Moreover, again, Greenlee's statements under oath were not merely contradictory or inconsistent, like the statements in Timberlake and Evans, but inconsistent to the degree that one of them is necessarily false. This is not a case where a witness changes her story during the course of an investigation or during her trial testimony and is merely impeached with her prior inconsistent statements and those inconsistencies are to be resolved by a fact-finder. Greenlee's explanation and disclaimer of her guilty plea testimony at Smith's trial does not obviate her perjury. The State's reliance on Timberlake and Evans is misplaced. Greenlee's statements were not merely inconsistent but mutually exclusive.

10

The State attempts to rationalize Greenlee's perjury with the storyline that she merely recanted her prior testimony. But her guilty plea testimony is not merely extrinsic evidence of a prior inconsistent statement. See Evidence Rule 613(b). Greenlee's prior guilty plea testimony about material facts entirely within her knowledge is not a mere self-contradiction that can be corrected. A judgment of conviction was entered based on that testimony. While Greenlee is a competent witness, Greenlee gave perjured testimony as a matter of law at Smith's trial, and perjured testimony is not competent evidence. As our supreme court held in Wallace, a conviction based on perjury will not be upheld. 474 N.E.2d at 1008. Perjured testimony cannot be offered to prove the truth of the matter asserted. Perjured testimony renders a witness' oath to tell the truth, the whole truth, and nothing but the truth meaningless. Perjured testimony contaminates a trial, violates due process and strikes a blow to the heart of our judicial system.

Whether the State Knowingly Proffered Perjured Testimony

The State also contends that it did not knowingly proffer perjured testimony. The State maintains that "it could not be sure what Greenlee would ultimately testify to until she was called as a witness." Appellee's Br. at 4. But a party engages in conduct "knowingly" if he is aware of a high probability that he is doing so. I.C. § 35-41-2-2. And the record shows that, before Greenlee testified, the State was aware at least of a high probability that it was offering perjured testimony. First, the State knew the factual basis Greenlee had given for her guilty plea and granted her immunity from prosecution for perjury for that testimony. Second, in its opening statement, the State told the jurors that they would hear two versions of events from Greenlee, including a version where

11

Smith was the principal, contrary to her testimony at her guilty plea hearing. And third, the State advised the jurors that Greenlee's "inconsistent" statements would be "something you're going to have to deal with at the end of this process." Tr. at 9.

Thus, while the State disclaims having had prior knowledge of how Greenlee would actually testify at Smith's trial, the State's grant of immunity and its opening statements demonstrate that the State was aware of a "high probability" that it was going to call a witness whose testimony would be directly contrary to prior statements made by that witness under oath in a court proceeding. And, of course, the grant of immunity did not eliminate the perjury, only the prosecution for it. Thus, the State knowingly proffered perjured testimony. And after Greenlee had testified, the State knew with certainty that she had committed perjury. At that point, the State had a duty to correct the perjury. See Wallace, 474 N.E.2d at 1008. The State should have joined in Smith's motion for a mistrial.

Harmless Error Analysis

Nonetheless, the State contends that Smith cannot show that he was denied his right to due process. In essence, the State alleges that any error in the admission of Greenlee's testimony was harmless. We first note that there is no question that the State's knowing proffer of perjured testimony violated Smith's constitutional right to due process. Napue, 360 U.S. at 269. Accordingly, in deciding what is harmless error with respect to violations of federal constitutional rights, "'[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" Chapman v. California, 386 U.S. 18, 23 (1967) (quoting Fahy v. State of

12

Connecticut, 375 U.S. 85, 86-87 (1963)). Stated another way, "[b]efore a constitutional error can be held harmless, the Court must be sufficiently confident to declare the error harmless beyond a reasonable doubt." Harden v. State, 576 N.E.2d 590, 593 (Ind. 1991) (citing Chapman, 386 N.E.2d at 23).

The State maintains that Greenlee's testimony that Smith was the principal is insignificant because there was sufficient evidence to convict Smith as an accomplice. In particular, the State contends that

> Greenlee and Smith could have both been convicted directly under accomplice liability. Greenlee was not asked any questions regarding Smith's involvement during her plea hearing, and she testified that she was admitting her involvement in the crime. Therefore, Greenlee's admission during her plea hearing is not necessarily contradictory, and certainly not perjury, because there is no distinction between the criminal liability of the principle [sic] and the accomplice. Castillo v. State, 974 N.E.2d 458, 466 (Ind. 2012). Nothing in Greenlee's plea hearing exonerated Smith. Greenlee merely provided inconsistent stories, as was submitted to the jury on direct examination, and her statements were thoroughly explored on cross-examination.

Appellee's Br. at 8 (citations to record omitted; emphasis added).

That is, the State presented to the jury two theories of liability against Smith: that he was the principal or that he was the accomplice. Of course, if the jury convicted Smith as the principal, the perjury contributed directly to the jury's verdict. If, however, the jury convicted Smith as an accomplice, the perjured testimony may have been irrelevant. But whether there was sufficient evidence to convict Smith as an accomplice does not resolve the question of whether Greenlee's perjury constituted harmless error.

The problem with the State's reliance on accomplice liability as an antidote to the perjured testimony is that this court cannot discern why the jury voted the way it did.

13

Special verdicts do not exist in Indiana, see Ind. Trial Rule 49, and on appeal this court may not speculate on the jury's reasoning. Neither can this court suppose that the jury gave no credit to Greenlee's perjured testimony and convicted Smith as an accomplice based on the State's other evidence. Under the harmless error analysis applicable to federal constitutional violations, the fact that the jury might have found Smith guilty as the principal, in accordance with Greenlee's testimony, is sufficient to reverse Smith's conviction.[7] See Napue, 360 U.S. at 269-70. Greenlee's testimony was not harmless beyond a reasonable doubt. See Chapman, 386 U.S. at 24. The knowing use of perjured testimony violates due process, impeaches the verdict, and undermines the integrity of the judicial system. Greenlee's testimony poisoned the well and denied Smith a fair trial.

## Conclusion

The State knowingly proffered perjured testimony at Smith's trial, as there is substantial evidence that the State anticipated Greenlee's testimony and was aware of a high probability that she would commit perjury. Moreover, after Greenlee had testified at Smith's trial, the State knew that her guilty plea testimony and her trial testimony were inconsistent to the degree that one of them was necessarily false. See I.C. § 35-44.1-2-1. Greenlee's perjury could not be cleansed, as the State suggests, by a jury determination that her testimony at Smith's trial was credible. And the possibility that Smith was convicted as an accomplice does not render Greenlee's perjured testimony harmless

---

[7] Indeed, there is a paucity of evidence to implicate Smith in the burglary as an accomplice. For instance, while Detective Wiley testified that Smith and Greenlee were in close proximity when they were communicating by cell phone during the burglary, on cross-examination, Detective Wiley admitted that he did "not know how far away [each] cell phone was" from the cell tower near the Dollar General store when Smith and Greenlee made the calls that night. Tr. at 104.

14

beyond a reasonable doubt.  We hold that Smith's conviction was obtained by the State's

knowing use of perjured testimony, and we reverse his conviction.[8]

Reversed.

BAILEY, J., and PYLE, J., concur.

---

[8] The Indiana Supreme Court Disciplinary Commission ("Disciplinary Commission") has exclusive jurisdiction to discipline an attorney, where appropriate, for acting in violation of the Rules of Professional Conduct.  We are troubled that the State knowingly proffered perjured testimony but are even more concerned that the State granted the witness immunity from prosecution, which encouraged such testimony.  Thus, we direct the Clerk of this Court to send a copy of this opinion to the Disciplinary Commission.  We also note that instances of prosecutorial misbehavior continue to come before us on appeal notwithstanding our admonishments.  See Joel Schumm, "Isn't it Time to Get Serious About Prosecutor Misconduct?," The Indiana Law Blog (July 7, 2014), http://indianalawblog.com/archives/2014/07/ind_courts_isnt.html.